OKLAHOMA TAX COMMISSION et al.
v. FORTINBERRY CO., Inc., et al.

No. 33059.   April 19, 1949.
Rehearing Denied June 21, 1949.

*207 P. 2d 301.*

C. W. King, General Counsel, and R. F. Barry, both of Oklahoma City, for plaintiff in error Oklahoma Tax Commission.

D. A. Richardson and Earl Pruet, both of Oklahoma City, for defendant in error Fortinberry Company, Inc.

PER CURIAM. On February 28, 1938, the Fortinberry Company, Inc., hereinafter designated as plaintiff, filed in the district court of Oklahoma county its petition or application for a writ of mandamus against the Oklahoma Tax Commission.

Plaintiff by its application sought to have the court require the defendant commission to approve and allow a claim presented and filed with defendant by plaintiff for the purchase price of certain bolts and nuts under a contract entered into on May 18, 1937, between the Tax Commission and plaintiff.

Upon the issuance of an alternative writ defendant Oklahoma Tax Commission filed its return thereto, and thereafter filed an amended return. First National Bank & Trust Company of Oklahoma City filed a petition in intervention. The trial court, upon a hearing, issued the peremptory writ as prayed for by plaintiff and intervener, and defendant Tax Commission appeals.

Briefly stated, the essential facts are these: The Oklahoma Tax Commission, on May 18, 1837, the date the contract was entered into, was composed of only one member. S. L. 1936-1937, ch. 66, art. 1, p. 408. The commission, or com-

missioner, who entered into the contract, thereafter died and another commissioner was appointed in his place. Plaintiff on the date of the contract was the owner of patents covering a license plate or tag for motor vehicles, known as the Fortinberry Lock-Strip License Plate, which consisted of three parts: (1) A number plate of the size commonly used on motor vehicles; (2) two bolts and two nuts used to attach the plate to the motor vehicle; and (3) a lock strip to prevent the plate from being detached and used on another motor vehicle. The contract provided that in consideration of plaintiff granting to the Tax Commission the right to manufacture and use for its 1939 license tag requirements the lock strip license plate above referred to, the Tax Commission agreed to purchase from plaintiff a set of two bolts and two nuts for each number plate to be used for the year 1939, in any event not less than 675,000 pairs, at the price of seven and one-half cents per pair. Said bolts and nuts to be delivered at McAlester, Oklahoma, on or before January 10, 1938.

After the execution of the contract plaintiff entered into another contract with a Connecticut firm for the manufacture and delivery of the minimum number of bolts and nuts specified in the contract. On October 11, 1937, the then Tax Commission, the successor in office to the Tax Commission which entered into the contract, wrote a letter to the plaintiff concerning the subject matter of the contract. The letter is relied on by the Tax Commission as notice of its alleged repudiation of the contract, and we will set forth the terms thereof when considering its effect in such respect. A similar letter was written to First National Bank & Trust Company, the intervener herein, which had accepted an assignment of the contract by plaintiff as security for a loan. On December 20, 1937, the manufacturer of the bolts and nuts shipped the same to McAlester consigned to the warden of the State Penitentiary, and tendered delivery to the warden, but the tender was refused. Thereupon plaintiff filed this action.

Defendant contends that the then Tax Commission was without authority to enter into the contract with plaintiff, since such authority was not expressly granted by the statute. In support of this contention it cites the case of Lingo-Leeper Lumber Co. v. Carter, 161 Okla. 5, 17 P. 2d 365, in which we held that public officers have and could exercise only such powers as were conferred upon them by law, and that the state was not bound by contracts made by its officers and agents unless authority to make such contracts was conferred by the statute or Constitution. That case involved a statute appropriating funds for definite and specific purposes only. The decision involved a contract entered into by the State Board of Affairs to expend a part of the appropriation for a purpose other than those stated in the Act. We held that the language of the statute therein involved did not within the remotest degree of reasonable certainty authorize the establishment of another penal institution in this state, and that a contract entered into for that purpose by the State Board of Affairs was not authorized by the statute.

The applicable law in this case is article 7, ch. 50, S. L. 1936-1937 (47 O.S.A. §19) governing the licensing and registration of motor vehicles, which act was in force when the contract was entered into.

Section 3 (c) of the Act, 47 O.S.A. §19 (b), subdivision (c), created a fund to be used by the Tax Commission in paying the cost and expense "necessarily incurred by said commission in administering and enforcing this Act," and for other purposes in connection with the Act. Section 4 provided that each owner of a vehicle for which a license was required should file an application for registration containing such information as was required by the commission. Section 5, which authorized the issuance of number plates, provided:

"Upon the filing of such application and the payment of the fee provided by this Act, the Commission shall assign to such vehicle a distinctive number, and issue and deliver to the owner or custodian of such vehicle a certificate of registration and two (2) appropriate identification and number plates in form and size as prescribed by the Commission. Such plates shall be securely fastened to the vehicle for which issued; one of such plates to be on the rear of the vehicle, one of such plates to be on the front of the vehicle. Both plates and all numbers must be clearly visible at all times.

"The Commission is hereby authorized to promulgate rules and regulations, requiring such plates to be displayed in a uniform manner."

Clearly the issuance of the identification and number plates was an integral part of the enforcing of this Act, for which the commission was authorized to pay by section 3 of the Act. Since the commission was authorized by the two sections to prescribe the form and size of the plate, and to pay for the plates out of the fund provided in section 3, we think the commission was authorized to contract and pay for such license plates as it deemed necessary to carry out the requirements of the Act.

In City of Wilburton v. King, 162 Okla. 32, 18 P. 2d 1075, we said:

"In addition to the powers expressly given by statute to an officer or a board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted or as may be fairly implied from the statute granting the express powers."

Since the law required the commission to issue the plates and pay therefor without the intervention of any other state agency, we think the right to contract for such plates and to pay therefor is a reasonable implication from the language of the statute.

Defendant asserts that the plates were "supplies" and as such could be contracted for and purchased only by the State Board of Affairs, under the provisions of 74 O. S. 1941 §64. That section vests in the Board of Affairs authority to contract for, purchase and acquire

" . . . all furnishings, furniture and supplies of every kind or description for the use of the State or its officers, or the support of several State institutions, including printing, stationery, fuel, tools, implements, furniture, books, food, clothing and medical supplies where the law requires the State to furnish the same."

It will be noted that the specific furniture, fixtures and supplies enumerated · in the section are those which would necessarily be used or consumed in carrying on the ordinary and usual business of the department or institution to which they were furnished.

In Worley v. French, 184 Okla. 116, 85 P. 2d 296, we said:

"General words do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms."

It is true that in section 64, supra, the general words precede the particular classes enumerated, but we consider this immaterial to the application of the rule stated in Worley v. French, supra. In 50 Am. Jur. p. 244, section 249, it is stated that general and specific words in the statute which are associated together, and which are capable of analogous meaning, take color from each other, so that the general words are restricted to a sense analogous to the less general, and that "under this rule general terms in a statute may be regarded as limited by subsequent more specific terms." When this rule is applied to section 64 it is reasonably apparent that the Legislature did not intend to divest the Tax Commission of the right to purchase and pay for registration plates to be issued to vehicle owners in connection with the enforcement of the 1937 law, but intended only to authorize the pur-

chase by the Board of Affairs of those supplies ordinarily and usually used by the various state departments and institutions in carrying on their every day business affairs.

Defendant also asserts that even if it be assumed that the Tax Commission was authorized to contract for license plates, it had no authority to purchase and pay for bolts and nuts to be used in attaching said plates to the vehicle. This might ordinarily be true, but in the instant case it appears that the plates, the bolts and nuts and the lock strip were all included in plaintiff's patent and together constituted the license plate, or tag, for which the commission contracted. Under the contract the commission was authorized to procure from such sources as it desired the plate and the lock strip, which evidently it considered could be manufactured at McAlester penitentiary. But there is no showing that the bolts and nuts, which were peculiarly constructed as a part of the license tag, could be manufactured there. From the evidence adduced at the trial of the case it appears that the distinguishing characteristic of the patented plate was that because of the use of the lock strip and bolts, the plate could not be removed from one vehicle, to be placed on another, without defacing it, thus permitting the fact that it had been changed from one vehicle to another to be easily ascertained. In fact, a witness testified that it could be removed only by removing the bracket on the automobile or truck to which the plate was attached. This characteristic or feature was apparently considered desirable by the Tax Commission who entered into the contract, and since the bolts and nuts were essential to this feature, we are of opinion that authority in the commission to procure license plates in such form as it considered proper authorized it to procure this patented plate in its entirety.

Having held that the contract is valid, the question is whether by reason of the breach plaintiff is entitled to performance as provided in Tit. 23 O. S. 1941 §31, or is relegated to an action for damages as provided in section 32 of the same title. The sections are as follows:

"Sec. 31. The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is vested in him, is deemed to be the contract price.

"Sec. 32. The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be:

"1. If the property has been resold, pursuant to Section 3850, the excess, if any, of the amount due from the buyer, under the contract, over the net proceeds of the resale; or,

"2. If the property has not been resold in the manner prescribed by section 3850, the excess, if any, of the amount due from the buyer, under the contract over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it."

It is contended by the Tax Commission that plaintiff is not entitled to performance under said section 31 because the title to the bolts and nuts was not in the Tax Commission at the time of its refusal to accept the delivery, a condition precedent to the application of that section, and therefore plaintiff's right of action is necessarily one for damages as provided in said section 32. As the basis for the contention it is declared that the bolts were not in existence and were to be manufactured for future delivery on which the title was to pass; that prior to the completion of the manufacture the Tax Commission notified the plaintiff of its refusal to be bound under the terms of the contract; and, by reason thereof, the plaintiff was not authorized to complete the manufacture of the bolts and nuts for delivery and the Tax Commission was under no obligation.

As authority for the contention there is quoted from 55 C. J. 1063, the following:

"Where a buyer of goods to be manufactured by the seller countermands the order before the goods have been manufactured, and at a time when the seller can stop the work and thus mitigate his damages, the seller cannot proceed with the work so as to aggravate the damage, but can recover only such damages as are sustained prior to the receipt of notice countermanding the order."

Equally important and applicable is the unquoted remainder of the paragraph, which is:

"Although a substantial performance of the contract by the seller at the time of the buyer's breach may warrant the seller completing the manufacture of the goods, if the manufacture of the goods is merely in its initial stage, the seller must discontinue; and if he proceeds with the manufacture of the goods to completion, he cannot hold the buyer liable for such damages as might have been avoided."

Such is true because prior to the giving of such notice the plaintiff had entered into a contract with and become liable to another company for the manufacture of the bolts and nuts and at the time of the giving of such notice the major portion of the bolts and nuts had been manufactured. See Flynn Const. Co. v. Leininger, 125 Okla. 197, 257 P. 374. The letter of October 11, 1937, after reference to the contract, states the following:

"This is to advise you that the Oklahome Tax Commission does not expect to exercise any right, license or privilege to manufacture or use for its 1939-1940 automobile license tags a certain lock-strip license plate known and described as the Fortinberry Lock-Strip License Plate.

"The Oklahoma Tax Commission does not expect to use any nuts and bolts such as those described in the instrument above referred to and will not accept delivery of such from you.

"This is written to you so that you may take such steps as you deem advisable to protect any interest you may consider you have in the matter."

Before it could be properly said that the plaintiff could not continue to perform and recover on basis of full performance because of such notice, it must appear that the same constituted an absolute repudiation or refusal to perform. In Williston on Contracts (Rev. Ed.) vol. 5, section 1298, p. 3693, it is said:

"But the denial of an excuse to the injured party, if he fails to perform acts due by the terms of the contract before the time for the repudiator's performance is inconsistent with a line of cases in the United States, running back to 1845, which holds that after an absolute repudiation or refusal to perform by one party to a contract, the other party cannot continue to perform and recover damages based on full performance. This rule is only a particular application of the general rule of damages that a plaintiff cannot hold a defendant liable for damages which need not have been incurred; or, as it is often stated, the plaintiff must, so far as he can without loss to himself, mitigate the damages caused by the defendant's wrongful act."

In 13 C. J. p. 654, §727, concerning what constitutes repudiation, which is there termed "renunciation," it is said:

"The renunciation must be absolute and unequivocal; a mere expression of intention not to perform is not enough, but no precise form of words is necessary."

In the Smoot case, 15 Wall. 36, 21 L. Ed. 107, the court said:

"The most recent work and a very able one, on 'The law of sales of personal property,' lays down the rule on this subject as follows: 'A mere assertion that the party will be unable, or will refuse to perform his contract, is not sufficient; it must be a distinct and unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to

whom the promise was made; for if he afterwards continue to urge or demand a compliance with the contract it is plain that he does not understand it to be at an end.' Benj. Sales, 424. The English cases cited abundantly sustain the proposition."

We deem it to be too manifest to require any discussion that the letter, in contemplation of law, is insufficient to constitute a repudiation. And it follows therefrom that the right of the plaintiff to continue the manufacture and complete performance in accordance with the contract was not impaired thereby. In view of this conclusion, we think it unnecessary to review the argument upon the question whether under the facts the plaintiff would or would not have been authorized to complete the contract if such letter were sufficient to constitute a repudiation.

·That it was the duty of the Tax Commission to accept the shipment when tendered in accordance with the terms of the contract is clear. And that the title to the shipment passed to the Tax Commission on such tender and refusal is also clear. 46 Am. Jur. §583; annotation 51 L.R.A. (N.S.) 740, 749. The refusal to accept the delivery constituted a breach of the contract and thereupon plaintiff was entitled to specific performance and an action for the price. Levin v. Hunt, 70 Okla. 63, 172 P. 940; Storm, Adm'r, et al. v. Garnett et al., 99 Okla. 284, 227 P. 417; Haynes v. Brown, 18 Okla. 389, 89 P. 1124. It was the duty of the Tax Commission to approve the claim. Upon its failure so to do mandamus was a proper remedy. Flynn Const. Co. v. Leininger, supra; Board of Com'rs of Seminole County v. State ex rel. Cobb, County Judge, 31 Okla. 196, 120 P. 913.

**Judgment affirmed.**

ARNOLD, V. C. J., and WELCH, CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur. DAVISON, C.J., and LUTTRELL and HALLEY, JJ., dissent.