STATE of Oklahoma ex rel. DEPARTMENT OF HIGHWAYS of the State of Oklahoma, Plaintiff in Error,

v.

Hal B. McKNIGHT, an individual d/b/a McKnight Construction Company, Defendant in Error.

No. 43537.

Supreme Court of Oklahoma.

Jan. 11, 1972.

Rehearing Denied May 16, 1972.

Floyd W. Taylor, John Paul Walters, Oklahoma City, Oklahoma Dept. of Highways, for plaintiff in error.

Charles R. Nesbitt, Watts, Looney, Nichols & Johnson, by Clyde J. Watts, Oklahoma City, for defendant in error.

G. T. Blankenship, Atty. Gen. of Oklahoma, W. Howard O'Bryan, Jr., Asst. Atty. Gen., for amicus curiae, The State of Oklahoma.

Alpheus Varner, Poteau, Harrell Followell, Dist. Atty., Poteau, for amicus curiae, The Board of County Commissioners of the County of LeFlore.

LAVENDER, Justice:

This appeal arises in an action in the District Court of Oklahoma County in which the defendant in error, Hal B. McKnight, an individual doing business as McKnight Construction Company, as plaintiff, sought a money judgment against LeFlore County, Oklahoma (properly designated therein, pursuant to 19 O.S.1961 § 4, as the Board of County Commissioners of LeFlore County, Oklahoma), J. Paul Mathies, identified therein as a member of the board of county commissioners of that county, and Rex Collins and Harold F. Flood (an engineering partnership doing business as Collins & Flood), who resided in and were served with summons in Pittsburg County, Oklahoma. The money judgment sought against them was for damages allegedly resulting from acts of omission and commission in connection with the performance of two highway construction contracts by the plaintiff.

The plaintiff also named as defendants, and sought a mandatory injunction against, the individuals composing the State Highway Commission and the Department of Highways of the State of Oklahoma, including the individual holding the position of State Highway Director, the nature of which will be set forth later herein.

We note here that the statutes creating the Department of Highways (required by Section 1 of Article 16 of the Oklahoma Constitution) and the State Highway Commission also provide that the Department shall be governed by the State Highway Director, provided for therein, under such rules, regulations, policies and road improvement programs as may be prescribed by the Commission.

The plaintiff alleged, in substance and effect, that the Board of County Commissioners of LeFlore County adopted resolutions requesting the State Highway Commission to concur in its selection of two described highway construction projects in the county as federal-aid projects, and also requesting the use of money in the "Farm-to-Market and Secondary Road Fund" provided for in paragraph (e) of 47 O.S.1961 § 22.2, and matching federal-aid funds, to finance the projects; that, pursuant to such resolutions and the applicable statutes, the Department of Highways entered into the two contracts pleaded by the plaintiff, with one relating to "Oklahoma Federal Aid Secondary Project No. S-1006(1)C," in LeFlore County, and the other one relating to "Oklahoma Federal Aid Secondary Project No. S-1006(2)C," in LeFlore County; that the contracts were to be performed under the direct supervision of the Board of County Commissioners of LeFlore County and project engineers employed by the county; and that, in negotiating for and letting these contracts, the Department of Highways was acting as trustee for the county with respect to the funds involved, so that the Department's responsibility in the matter was limited to the approval, and payment out of funds so held as trustee for the county, of progressive estimates submitted by the plaintiff as contractor and approved by the project engineers.

He also alleged that the board of county commissioners employed the defendant engineers to provide certain engineering designs and services, including inspection of the work, required by the contracts, and (together with the defendant member of the board of county commissioners) to supervise construction and completion of the projects.

The plaintiff further alleged, in substance and effect, that, because of the county's failure to provide the necessary

right-of-way and access to the project sites, as required by the contracts, it was impossible for him to commence work on the projects for some time after the commencement dates designated in the work orders issued to him by the Department, and that, after commencing work on the projects, he was continually delayed, interrupted and harassed by erroneous and defective engineering, poor and improper inspection, and willful and negligent acts of delay and interruption, on the part of the defendant engineers, and by willful and deliberate delay, interruptions and intimidation on the part of the defendant member of the board of county commissioners; and that, as a result of such acts of omission and commission on the part of the county, the defendant member of the board of county commissioners, and the defendant engineers, he sustained injury and damages, consisting of additional work and expenses necessarily done and expended in completing the projects in accordance with the contracts, in the amount of $51,087.49 with respect to Project No. S–1006(1)C, and $28,636.68 with respect to Project No. S–1006(2)C, and, in addition thereto, was charged by the defendant engineers with liquidated damages for failure to complete the projects within the number of working days prescribed therefor in the contracts, in the amount of $9,380.00 with respect to Project No. S–1006(1)C, and $3,660.00 with respect to Project No. S–1006(2)C.

He also alleged that, after completing the contracts, he filed with the Department of Highways a claim for the unpaid balance of the contract price, plus the damages sustained by him, with respect to each project; that the defendant state officials wrongfully deducted the amount of $9,380.-00 on Project No. S–1006(1)C, and $3,660.-00 on Project No. S–1006(2)C, as liquidated damages for failure to complete the projects within the number of working days designated in the contracts, although they then held those amounts in trust for LeFlore County and applicable to these projects, and arbitrarily and capriciously refused to approve, and provide for the payment from funds they held as trustee for LeFlore County and the plaintiff, his claims for damages resulting from the negligent and wrongful acts of the county, the defendant member of the board of county commissioners, and the defendant engineers.

The plaintiff prayed for money judgments against LeFlore County, the defendant member of the board of county commissioners, and the defendant engineers, in the amount of $51,087.49 with respect to Project No. S–1006(1)C and in the amount of $28,636.68 with respect to Project No. S–1006(2)C, for damages consisting of extra labor, equipment, and overhead costs incurred by him as a direct and proximate result of their negligent and wrongful acts.

He also prayed for a mandatory injunction ordering and directing the defendant members of the Department of Highways and State Highway Commission, acting as trustees of funds allocable to LeFlore County, to hold, subject to further order of the court, out of such funds, an amount sufficient to cover wrongful deductions of liquidated damages from the contract proceeds, in the amount of $9,380.00 with respect to Project No. S–1006(1)C and in the amount of $3,660.00 with respect to Project No. S–1006(2)C, and plaintiff's claims for extra labor, equipment and overhead, in the amount of $51,087.49 with respect to Project No. S–1006(1)C and in the amount of $28,636.68 with respect to Project No. S–1006(2)C, to be distributed between the plaintiff and LeFlore County pursuant to judgment and order of the court.

The two contracts pleaded by the plaintiff (and admitted by the defendant state officials) are in writing. Each contract recites that it is entered into between "the Department of Highways, acting for and on behalf of the State of Oklahoma," as first party (therein designated as the "State"), and this plaintiff, as second party (therein designated as the "contractor").

In each contract, the contractor agrees to furnish all tools, equipment, materials

and labor, and to build and complete the designated "project" in accordance with the plans therefor on file in the Department of Highways (and other documents identified therein but not attached to the petition), under the direct supervision and to the entire satisfaction of the Department of Highways and, when federal funds are involved, subject to inspection at all times and approval by the federal agency having charge of federal-aid highway funds, and to do so at the unit prices bid by the contractor and made a part of the contract.

In the contract relating to Project No. S-1006(1)C, the total cost of the "project" is estimated at $122,429.14. In the contract relating to Project No. S-1006(2)C, the total cost of the "project" is estimated at $67,999.12.

Each contract provides that the "state share" of the cost of the project is fifty per cent, estimated to be $61,214.57 for Project No. S-1006(1)C and $33,999.56 for Project No. S-1006(2)C, and (in substance and effect) that the other fifty per cent thereof or "federal share," estimated to be $61,214.57 for Project No. S-1006(1)C and $33,999.56 for Project No. S-1006(2)C, shall be payable from, and only from, federal-aid funds provided under a contract between the state and the federal government, in which the federal government agrees to pay the federal share of the cost of the project in accordance with the plans, specifications and estimates and as the work progresses.

Each contract also provides that the contractor shall begin work on the project on the day designated by the engineer and shall complete the work within 120 days after that date, and that, if the contractor shall fail to complete the work within that time, he shall pay to the state, as liquidated damages, ascertained and agreed and not in the nature of a penalty, a stated sum per day for each day's delay, to be deducted from the amount of the final estimate made by the contractor.

47 O.S.1961 § 22.2—paragraph (e) of which is pleaded by the plaintiff—was enacted as Section 3 of the Motor Vehicle License and Registration Act of 1941 and provides for the disposition to be made of all money collected or received by the Oklahoma Tax Commission pursuant to that act. Unlike the other paragraphs of the section, paragraph (e) does not provide that a part of the money shall be "returned" to the counties, or "distributed," or "remitted," to the various county treasurers. It provides that:

"Twenty percent (20%) shall be *allocated to a Farm-to-Market and Secondary Road Fund* for the purpose of matching Federal funds for the construction of farm-to-market roads and secondary roads or the purchase of right-of-way for primary, secondary or urban roads.

"During the fiscal year for which said funds are collected, allocated or received, any county may use *its proportionate part of said twenty per cent (20%)* for the purpose of matching Federal Aid Secondary Funds or for the purpose of purchasing right-of-way for primary, secondary or urban roads, but if the amount or any part thereof allocable to any county shall not be so used or obligated by the county commissioners or any county within any fiscal year or twelve (12) months thereafter, such amount *shall be used by the State Highway Commission* for the purpose of matching Federal Aid Secondary Funds for the construction or improvement of any roads or highways on the Federal Aid Secondary Highway System."

(Emphasis supplied)

The answer filed upon behalf of the defendant state officials renews their objection (previously overruled by the trial court) to the jurisdiction of the court over them or the subject-matter of the action against them, on the stated ground that the suit is one against the state to which the state had not given its express consent.

The answer admits that the contracts pleaded by the plaintiff were entered into by the Department in accordance with the provisions of paragraph (e) of 47 O.S.1961 § 22.2 and other applicable statutes, and tacitly concedes that, insofar as the "state share" of the cost of the projects is concerned, each contract was made against otherwise-unencumbered money to the credit of LeFlore County in the Farm-to-Market and Secondary Road Fund provided for in paragraph (e) of 47 O.S.1961 § 22.2, and based upon the resolutions pleaded by the plaintiff, "obligated" (as that term is used in that paragraph of that statute) a portion of that county's "proportionate part" of that fund.

The answer includes allegations in conflict with the plaintiff's pleaded conclusions concerning the Farm-to-Market and Secondary Road Fund and a county's interest in that fund. It also contains allegations that neither that fund, nor the federal-aid funds mentioned in the statute, may be used for the payment of damages resulting from wrongful or negligent acts or omissions of any individuals.

Subsequent to the filing of the answer upon behalf of the defendant state officials, the plaintiff's action was dismissed as to all of the other defendants, partly, if not entirely, as a result of this court's opinion in the 1967 case of Board of County Commissioners of County of LeFlore v. District Court of Oklahoma County et al., 435 P.2d 157, in which the defendant state officials were not parties. In that opinion, this court, on the ground of lack of venue as to the county, prohibited the respondent court from proceeding any further in the case as against the county, except to dismiss the action against it.

Thereafter, the case was tried to the court without a jury. The trial court filed written findings of fact and conclusions of law to the effect that these were state, rather than county, projects and contracts; that, in connection with these projects and contracts, J. Paul Mathies and Collins and Flood were the agents of the State of Oklahoma acting by and through its Department of Highways; that their acts of omission and commission, complained of by the plaintiff, constituted breaches of the contracts by the State of Oklahoma acting by and through its Department of Highways, which resulted in the plaintiff's being improperly charged for liquidated damages for failure to complete the projects within the time specified therefor in the contracts, as well as resulting in the plaintiff's incurring the extra costs of performance of the contracts claimed by him as damages; and that, with respect to each project, the extra cost of performance of the contract constituted a part of the cost of the project.

The trial court also found and concluded that the plaintiff is entitled to "recover from the State of Oklahoma" extra cost of performance incurred by the plaintiff as the result of acts and omissions of J. Paul Mathies and Collins and Flood, the sum of $106,142.09 with respect to Project No. S–1006(1)C and in the sum of $62,316.63 with respect to Project No. S–1006(2)C; and that "the State of Oklahoma, acting by and through the Oklahoma Department of Highways," has improperly and wrongfully charged liquidated damages against the plaintiff, in the amount of $9,380.00 on Project No. S–1006(1)C and in the amount of $3,660.00 on Project No. S–1006(2)C.

The trial court also concluded, as matters of law, that: "The Legislature of the State of Oklahoma, having empowered the Oklahoma Highway Commission to let or supervise the letting of all contracts for construction or improvement of State Highways, has thereby waived the state's immunity to suits by parties to such contracts for breach thereof by the state;" and that: "Insofar as funds may be available and allocable to LeFlore County for payment of plaintiff's claims for extra cost of performance of the above contracts, this is not an action against the State of Oklahoma." The court did not find that such funds, in any amount, were available and allocable to LeFlore County for such purpose.

Although not directly involved in the judgment rendered, or order made, by the trial court, the written findings of fact and conclusions of law contains the following additional conclusion of law:

"In the event that the Oklahoma Highway Commission and the members and officials thereof, should be unable to procure and allocate to payment of the judgment in favor of plaintiff, funds available to LeFlore County, Oklahoma, judgment should be entered, generally, against the State of Oklahoma for contractual obligations to plaintiff, in the form of extra cost and expense of performance of the above contracts, and improperly charged liquidated damages, resulting from acts and omissions of J. Paul Mathies, County Commissioner, and Collins & Flood, Engineers, to whom the Oklahoma Highway Commission delegated responsibility for design and supervision of performance of the above described contracts; and the State of Oklahoma is not entitled to avoid ultimate liability therefor, upon the ground of sovereign immunity."

In its journal entry, the trial court, "in accordance with the Findings of Fact and Conclusions of Law," rendered judgment in favor of the plaintiff and against "the Oklahoma Department of Highways, the Oklahoma Highway Commission and the individual members thereof in their official capacities," in the amount of $181,498.72, with interest on $13,040.00 thereof at the rate of ten per cent per annum from June 30, 1963 (the date as of which the court found that amount, representing liquidated damages wrongfully withheld, should, reasonably, have been paid to the plaintiff), and with interest on the other $168,458.72 thereof at the rate of ten per cent per annum from the date of the judgment, April 1, 1969, "to be paid from funds allocable to LeFlore County, Oklahoma, for highway purposes from both state and federal sources," with a proviso that the judgment shall, in no way, be construed as an "in personam" judgment against the individual defendants.

The journal entry then provides that:

"The defendants, in their official capacities, are ordered and directed to perform and exhaust all administrative remedies and procedures available to them for obtaining funds for highway purposes applicable to Oklahoma Highway Construction Contracts S–1006(1)C and S–1006(2)C, in LeFlore County, Oklahoma."

A motion for a new trial was filed upon behalf of the State of Oklahoma, attacking the "judgment" rendered by the trial court, without mentioning the order made by the trial court. That motion was overruled. This appeal, upon behalf of the State of Oklahoma, is taken upon the original record. The record on appeal does not include a transcript of the proceedings had at the trial of the case.

The appeal, as presented to this court, is concerned only with the doctrine of the state's sovereign immunity from suit without its consent, and its effect upon the money judgment in this case.

Except for the plaintiff's argument that this court should abrogate that doctrine insofar as actions such as this one are concerned, the only issues presented to us are (a) whether or not the trial court erred in concluding, as a matter of law, that, by authorizing the Department of Highways or the State Highway Commission to enter into contracts such as those involved herein, the Legislature impliedly authorized actions against the state for damages for breach of such contracts, and (b) whether or not the trial court erred in concluding, as a matter of law, that, to such extent as money allocated or allocable to LeFlore County under the provisions of paragraph (e) of 47 O.S.1961 § 22.2, and matching federal-aid funds, may legally be applied to the payment of the plaintiff's judgment, this is not a suit against the state.

It appears that the trial court treated the plaintiff's prayer for a mandatory injunction, and the order made thereon, as being purely ancillary to the principal action for a money judgment, to aid the plaintiff in

the collection of the money judgment. Neither side argues the validity, or invalidity, of the order without the money judgment. Both sides tacitly concede that the validity of the order depends upon our disposition of the questions concerning the doctrine of sovereign immunity as applied to the action for a money judgment.

Numerous Oklahoma cases—some of which are listed in Henry v. Oklahoma Turnpike Authority et al. (1970), Okl., 478 P.2d 898, 901—hold that the State of Oklahoma is immune from suit without its consent, at least when, as here, the suit arises out of the performance of a governmental (sovereign) function of the state.

A number of them hold that "A sovereign state cannot be sued except by its consent granted by express legislative enactment." Wentz et al. v. Potter (1933), 167 Okl. 154, 28 P.2d 562; Hawks et al., Highway Commissioners, v. Walsh et al. (1936), 177 Okl. 564, 61 P.2d 1109; State Highway Commission v. Brixey et al. (1936), 178 Okl. 118, 61 P.2d 1114; State Highway Commission v. Adams (1936), 178 Okl. 270, 62 P.2d 1013; Potter v. State Highway Commission et al. (1939), 184 Okl. 171, 86 P.2d 293—all of which involved actions against the State Highway Commission or the members thereof in their official capacities for damages allegedly resulting from the construction of highways, not necessarily involving negligence or other form of tort.

In Jack v. State (1937), 183 Okl. 375, 82 P.2d 1033, 1034 (an action for a money judgment for damages arising out of personal injuries resulting from alleged negligence on the part of certain officers, employees or agents of the state), it is said that "The state, in the absence of an express statute creating a liability therefor, is not liable in a civil action for damages for the neglect of its officers or those they are obliged to employ, in improperly performing, or in failing to perform, their duties as such officers or employees." And, in State ex rel. Williamson, Attorney General, v. Superior Court of Seminole County et al. (1958), Okl., 323 P.2d 979, 981 (a similar action but involving alleged negligence on the part of a Highway Patrolman), this court said:

"It is fundamental that the State cannot be sued in any manner, or upon any liability, constitutional, statutory, or contractual, unless there is express consent thereto. * * *."

In Donaldson v. Board of Regents, etc. (1942), 190 Okl. 269, 122 P.2d 139, this court held, in its syllabus:

"An action against the Board of Regents of University Preparatory School and Junior College of Tonkawa, Oklahoma, and the named members of said Board of Regents for damages for breach of a contract for teaching in said institution is an action against the State and cannot be maintained in the absence of a permissive statute or other consent of the State."

The right of the sovereign state to immunity from suit is a public right and must not be treated as relinquished or conveyed away by inference or construction; the statutes must clearly permit the state to be sued or the right to do so will not exist. Hawks et al., Highway Commissioners, v. Walsh, supra, and State Highway Commission v. Brixey et al., supra, in which the reasons for the rule are quoted, with approval, from a New Mexico case:

" 'Both legally and practically we consider the state's immunity from suit too important a matter to be trifled with. "A sovereign is exempt from suit, not because of any formal conception of obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." Mr. Justice Holmes in Kawananakoa v. Polyblank, 205 U.S. 349, 27 S. Ct. 526, 527, 51 L.Ed. 834. * * *.

" 'Moreover, a question of jurisdiction arises. This court is the creature of the sovereign state. It can have no natural or presumptive jurisdiction over its creator. Such jurisdiction as we have over the state we must trace to the Constitu-

tion or to that branch of government which declares the state's public policy. In the absence of plain consent, to entertain a suit against the state is judicial usurpation.

" 'Furthermore, "It is usually said that statutes authorizing suits against the state are to be strictly construed, since they are in derogation of the state's sovereignty." 59 C.J. 303, 25 R.C.L. 416, Lewis' Sutherland, St.Const. (2d Ed.) § 558.' "

■ The trial court erred in basing any part of its money judgment in this case upon its conclusion of law that, by empowering the Department of Highways or the State Highway Commission to enter into highway construction contracts such as the ones involved herein, the Legislature impliedly authorized parties to such contracts to sue the state for damages for breach of such contracts.

■ For the purpose of considering the other conclusion of law under attack herein, we shall first assume that the State of Oklahoma has no interest whatsoever in any of the money that would be affected by the mandatory order against the defendant state officials. We are unable to understand how a suit against the state for a money judgment could be changed into something other than a suit against the state by the mere fact that some portion of the money judgment against the state might be paid from money in which the state has no interest. This is especially true where, as in the present case, the money would be paid under an ancillary order which has no validity unless the action in which the money judgment was rendered is not a suit against the state. If the mandatory order had not been made in this case, the situation would be much the same as though the money judgment was against the State of Oklahoma and some other legal entity, jointly, with a possibility that the plaintiff might be able to collect some part, or even all, of his judgment from the other judgment debtor. In either situation, as we see it, the money judgment

is rendered in a suit against the state, regardless of the fact that some part, or even all, of the judgment might be paid with money in which the state has no interest.

■ Contrary to the plaintiff's contention, the State Highway Commission is not acting in this case as a mere stakeholder of a specified amount of money which it admits it owes to one or another of the primary parties to the action for a money judgment, as was the situation in McCoy & Son v. First National Bank of Cleveland et al. (1926), 123 Okl. 170, 252 P. 404. That case is not in point.

■ The plaintiff's argument that this is not a suit against the State of Oklahoma because the contracts involved herein were made by, and for the use of, LeFlore County, to be supervised by the county and paid for out of funds belonging to the county, not out of general funds of the state, is in conflict with the trial court's findings and conclusions with respect to the relationship between the State of Oklahoma, the Department of Highways and the State Highway Commission, on the one hand, and LeFlore County, the named member of its board of county commissioners and the project engineers, on the other hand, insofar as these contracts are concerned, and with the money judgment rendered and contemplated by the trial court. If that argument by the plaintiff were correct, there would be no basis whatsoever for the money judgment rendered against the Department of Highways, the State Highway Commission and the members thereof in their official capacities.

The trial court erred in concluding, as a matter of law, that this is not a suit against the state insofar as money allocated or allocable to LeFlore County under the provisions of paragraph (e) of 47 O. S.1961 § 22.2, and matching federal-aid funds, might legally be applied to the payment of the plaintiff's judgment or contracts.

In Fortinberry Company, Inc. et al. v. Blundell et al. (1952), 206 Okl. 261, 242 P.

2d 427—an original proceeding in this court for a writ of mandamus to compel certain state officials to approve the plaintiff's claim for an amount allegedly due under a contract with the state, issue a warrant thereon and pay the same, in which the matter of sovereign immunity was raised—this court, in ordering that the writ be issued, held in the fourth paragraph of its syllabus:

> "The sovereign state cannot be sued without its permission. Mandamus is the sole remedy of one holding a valid claim against the State, which its officers wrongfully refuse to pay."

It may be that, originally, the plaintiff in the present case was seeking a writ of mandamus against the defendant state officials to compel them to take such steps as were necessary, and legally available to them, to set aside sufficient of the money against which his contracts were entered into to pay his claim for liquidated damages wrongfully withheld by them, in such amount as might be determined by the trial court. However, as the case was presented to, and decided by, the trial court, and presented to this court, that theory was abandoned and mandamus, in the ordinary sense, was not; and is not, involved.

Without determining whether or not this court would have the power to abrogate, either entirely or partially, the doctrine of the state's sovereign immunity from suit without its express consent when the suit arises out of the performance of a sovereign function of the state, we refuse to meddle with that doctrine. In doing so, we repeat what this court said in the concluding paragraph of the opinion in Henry v. Oklahoma Turnpike Authority et al., supra:

> "The doctrine of governmental immunity has long been the law and public policy of this State. This doctrine has long been recognized and followed by this court. We see no compelling reason for us to disrupt the present policy of this State and overrule a long line of past decisions. If the present policy is to be changed it should be done by the legislature, as representatives of the people, and not by this court."

The money judgment rendered, and the mandatory order made against the defendant state officials, by the trial court are reversed, and the cause is remanded to the trial court with directions to vacate that judgment and order and to enter judgment in favor of the defendant state officials.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON, and IRWIN, JJ., concur.

HODGES and McINERNEY, JJ., dissent.

HODGES, Justice (dissenting).

I dissent for the reasons stated in my dissenting opinion in the recent case of Newman v. State of Oklahoma ex rel. Board of Regents, etc., 490 P.2d 1079 (1971). There I concluded the doctrine of governmental immunity as court made law should be abrogated.

Especially is this so under the facts of this case where the State has entered into a contract pursuant to legislature authorization. See Grant Construction Company v. Burns, 92 Idaho 408, 443 P.2d 1005. Even if soverign immunity is to be continued, as the majority of the court has avowed, it should not be invoked in the present case where statutory authority for the State Highway Commission to enter into a contract is tantamount to legislative consent to be sued for the breach of that contract.

When a State has entered into a business contract with a private concern or individual the rights, duties and obligations of that contract are mutually binding and reciprocal. Each party should be allowed to enforce the provisions of that contract and each should be allowed to sue for damages when either causes a breach of the contract. There is no mutuality or reciprocity where the State can enforce the provisions of a contract and accept its benefits, and at the same time deny the right

of a citizen to sue where the actions on the part of the State has caused a breach of the contract resulting in damages to the individual. Fairness demands a better forum of justice.

I respectfully dissent.

McINERNEY, Justice (dissenting).

The majority opinion holds that the State Highway Commission is not obligated to perform according to the terms of an executed contract, voluntarily entered into pursuant to a statute, 47 O.S.1961, § 22.-2(e). This result is reached on the theory of governmental immunity, announced in the early case of Love v. Filtsch, 33 Okl. 131, 124 P. 30 (1912), relating to contracts with the State, and cases following *Love*. I would affirm the judgment on the basis of Oklahoma Tax Commission v. Fortinberry Co., 201 Okl. 537, 207 P.2d 301 (1949), wherein the Court stated in the first paragraph of its syllabus:

> "Where a special fund is created from sources not coming from, or out of, the general revenue fund of the State, authority may be granted to an officer, board or commission to expend said fund for a special purpose, where the authority to disburse said fund or obligate the State is limited to the amount of money that may go into said fund, and such officer, board or commission is not permitted to incur an indebtedness against the State which may be payable out of, or charged against, the general revenue fund of the State."

It seems to me that Oklahoma Tax Commission v. Fortinberry Co., supra, applies in the circumstances of this case since the Legislature has created a special fund to finance projects of this type involving highway construction contracts. 47 O.S. 1961, § 22.2(e). The general revenue fund of the State is not affected by the judgment of the trial court. In view of this statute and the judgment limiting satisfaction of the claim to monies from this special fund, I do not deem the form of the pleadings of controlling significance. I believe that the Legislature has fully accomplished the purpose of providing payment of these contracts by enacting 47 O.S.1961, § 22.2(e).

I respectfully dissent.