John P. SCHROM, a minor, who sues by and through his father and next friend, John V. Schrom, Appellant,

v.

OKLAHOMA INDUSTRIAL DEVELOP-MENT and Parks Department, Appellee.

No. 46060.

Supreme Court of Oklahoma.

May 13, 1975.

Chiaf & Murphy by Bill Murphy, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., of Oklahoma, Paul C. Duncan, Asst. Atty. Gen., Daniel J. Gamino, Legal Intern, Oklahoma City, for appellee.

IRWIN, Justice:

Appellant commenced this action against the Oklahoma Industrial Development and Parks Department (Appellee) to recover damages for injuries allegedly sustained while he was a guest at Fountainhead State Lodge. Appellant alleged that his injuries were caused by the negligence of Appellee's agents and employees in that they permitted to exist a glass door which contained no markings or warnings of its existence. Appellant sustained injuries when he attempted to walk through the door.

Appellee filed a demurrer alleging that the trial court did not have jurisdiction because Appellee was an instrumentality of the State of Oklahoma engaged in governmental functions and immune from suit.

The trial court, relying on 74 O.S.1971 § 356.1, sustained Appellee's demurrer. Appellant elected to stand on his petition and the trial court dismissed the action. Appellant appealed.

74 O.S.1971 § 356.1 [enacted in 1947] provides that the Oklahoma Planning and Resources Board, and any successor board, is "hereby declared to be a governmental agency and instrumentality of the State of Oklahoma * * *." Operation of the State lodges was transferred to the Oklahoma Industrial Development and Park Commission in 1965. 74 O.S.1971 § 1102. The alleged injuries in the case at bar were sustained prior to the enactment of 74 O.S.Supp.1972 § 1802, which transferred the management of the State lodges to the Oklahoma Tourism and Recreation Department. No contention is made that the 1972 amendatory act is material to the issues presented.

Appellee has liability insurance coverage on the lodge. It appears the lodge was constructed by the Oklahoma Lake Development Authority and bonds were issued to finance the construction. The Economic Development Administration, now a part of the Federal Department of Housing and Urban Development, purchased the bonds. One of the requirements of the bond indenture and the lease rental contract was that liability insurance would be required for the operation of the lodge. Appellee entered into a lease-rental contract with the Oklahoma Lake Development Authority and was operating the lodge when Appellant sustained his injuries. Appellant's claim for damages is less than the insurance coverage. If Appellant should recover a judgment against Appellee, no general state funds will be used to satisfy the judgment.

In State v. Superior Court of Seminole County, Okl., 323 P.2d 979 (1958), we said the State of Oklahoma, as a sovereignty, is immune from suit for torts of any of its officers, agents, or employees, unless it has effectively consented to be sued for such torts. This case was cited with approval in State ex rel. Department of Highways v. McKnight, Okl., 496 P.2d 775 (1972), wherein we said that the right of the sovereign state to immunity from suit is a public right and must not be relinquished or conveyed away by inference or construction; and the statutes must clearly permit the state to be sued or the right to do so will not exist. In Henry v. Oklahoma

Turnpike Authority, Okl., 478 P.2d 898 (1970), we held that an action in tort against the Authority for damages is an action against the State and cannot be maintained in the absence of a permissive statute or other consent of the State.

The case of State ex rel. State Insurance Fund v. Bone, Okl., 344 P.2d 562 (1959), involved a tort action against the State Insurance Fund for negligence of one of the Fund's employees. Recovery against the Fund was allowed on the basis that the statutes creating the Fund, and providing for its operation, made the Fund a business enterprise, as distinguished from a governmental activity. Independent control existed in the Fund to operate and maintain an insurance company in the same manner as a privately owned insurance company. We noted that under no circumstances could the general funds of the State be reached in order to satisfy an obligation of the Fund.

Appellee contends the operation of the lodge is a governmental function and the first three cases cited [323 P.2d 979; 496 P.2d 775; and 478 P.2d 898] are controlling. Appellee argues that the insurance was not purchased under any express or implied Legislative authority and has no bearing on the Oklahoma rule of sovereign immunity. On the other hand, Appellant contends the operation of the lodge is proprietary and the State Insurance Fund case [344 P.2d 562] is controlling. Appellant also contends that regardless of whether the operation of the lodge is governmental or proprietary, Appellee has waived its governmental immunity to the extent of the insurance coverage.

Whether the operation of the lodge constitutes a governmental or proprietary function is immaterial under the circumstances here presented.

In 1947 the Legislature granted additional powers to Oklahoma Planning and Resources Board (Appellee's predecessor) for operating, maintaining, extending and improving State Parks. See 74 O.S.Supp. 1947, §§ 356.1—356.20. The Board was authorized to acquire property by purchase, lease, gift and condemnation, and to maintain use and operate any and all property [§ 356.2(2)]; to sue and be sued [§ 356.-2(5)]; and to make contracts and execute such instruments as in the judgment of the Board were necessary or convenient to the exercise of the powers conferred upon it [§ 356.2(9)]. See 74 O.S.1971 § 356.1 et seq.

■ Appellee does not challenge the validity of the lease-rental contract, but contends that the insurance was not purchased under any express or implied Legislative authority. In our opinion, if the Appellee had Legislative authority to enter into the lease-rental contract, the purchase of liability insurance to meet the requirements of that contract was consistent with such authorization. We hold Appellee had Legislative authority to purchase the liability insurance.

If a department of State purchases liability insurance pursuant to Legislative authority, must the Legislature expressly waive governmental immunity before a tort action may be maintained against the department, or should the Legislative authority be construed to include an implied consent to be sued and waiver of governmental immunity to the extent of the insurance coverage?

The Legislature has authorized different departments of State, having governmental immunity to purchase liability insurance for certain purposes and expressly waived governmental immunity to the extent of the insurance coverage. See 47 O.S.1971 §§ 157.1 and 158.1. On the other hand, the Legislature has authorized the Board of Control of a county hospital to purchase public liability insurance without reference to the right to maintain a tort action against a county hospital. 19 O.S.1971, § 790.1b(8).

■ In our opinion, where the Legislature authorizes a department to purchase liability insurance, Legislative waiver of governmental immunity to the extent of the insurance coverage must be implied. Otherwise, the insurer would reap the ben-

efits of the premiums paid without being obligated to pay any damages for which the department was insured. A Legislative appropriation to a department presupposes the department will receive benefits for its expenditures.

Therefore, Legislative authority for a department to purchase liability insurance must be construed to include a consent to be sued and a waiver of governmental immunity to the extent of the insurance coverage only.

We hold that where a department of State purchases liability insurance pursuant to Legislative authority, the State has consented to be sued and waived its governmental immunity to the extent of the insurance coverage only. In reaching this conclusion we specifically modify, to the extent herein set forth, our holding in State ex rel. Department of Highways v. McKnight, Okl., 496 P.2d 775 (1972), and cases of similar import, wherein we, in effect, said that the right of the sovereign state to immunity from suit is a public right and must not be relinquished or conveyed away by reference or construction; and the statutes must clearly permit the State to be sued or the right to do so will not exist.

Appellee purchased liability insurance pursuant to Legislative authority and we hold the State has consented to be sued and waived its governmental immunity to the extent of the insurance coverage only.

Judgment of the trial court reversed and cause remanded for further proceedings.

WILLIAMS, C. J., and DAVISON and BARNES, JJ., concur.

SIMMS, Justice (specially concurring):

LAVENDER, J., concurs in results.

HODGES, V. C. J., and BERRY and DOOLIN, JJ., dissent.

SIMMS, Justice (specially concurring):

While I concur with the majority opinion which vests the right of recovery in the plaintiff below, and while I subscribe to the majority view that "governmental immunity" may effectively be waived by the purchase of liability insurance pursuant to legislative authority, I would strongly urge that plaintiffs right of recovery in the instant case is inherent in the statutes, and is therefore, not dependant upon the waiver of "governmental immunity" to the extent of the amount of the insurance purchased.

Title 74, O.S.Supp.1947, § 356.2, provides in part:

"The Board shall have and is hereby authorized to exercise the following powers, rights, and privileges: * * * (5) To sue and be sued."

The right to sue the agency controlling State Lodges was specifically granted in 1947, 74 O.S.Supp.1947, § 356.2(5), supra, and has been retained by the Tourism and Recreation Department, as will be demonstrated.

In 1964, operation of State Lodges was transferred to the Oklahoma Industrial Development Commission. 74 O.S. § 1111 provided that Commission should "exercise all authority and powers now vested in the Division of Recreation and Parks and in the Oklahoma Planning and Resources Board relating to state-owned lodges."

In 1972, pursuant provisions of Title 74, O.S.Supp.1972, § 1802 et seq., management of the State Lodges was again transferred to the Oklahoma Tourism and Recreation Department. Specifically, § 1810 provided:

"The Division of Lodges shall, subject to the policies, rules and regulations of the Commission: * * * (4) exercise all authority and powers now vested in the Oklahoma Industrial Development and Park Commission and the Oklahoma Industrial Development and Park Department relating to state-owned lodges."

The preceding review of the various statutes specifying the duties, obligations, privileges, immunities, and control of state owned lodges, reflects that the original provision that the Board or Commission in

control of State owned lodges may "sue or be sued" has neither been superseded, abrogated, modified, or negated.

It is the prevailing opinion of this Court based on long standing precedent that the right of the State to immunity from suit for its wrongs done to its citizens "must not be relinquished or conveyed away by inference or construction." But where the statutes clearly grant the right of suit against an agency, it is the duty of this Court to uphold that right.

I therefore, respectfully, do not subscribe to the view that the heretofore impenetrable veil of governmental immunity from suit for tortious acts committed in the conduct of the operation of State Lodges is pierced only by waiver, founded upon authorized purchase of liability insurance.

Since I believe there can be no question that a State operated lodge or hotel is commercial or proprietary in nature, regardless of whether the legislature intended to create a governmental agency, the effect of the majority opinion is to apply governmental immunity to all State agencies. The majority is establishing a poorly conceived precedent by bringing all agencies of the State, whatever their function, whether governmental or commercial in nature, within the penumbra of the anachronistic doctrine of governmental immunity, but only permitting suit and possible recovery where the legislature has authorized and the agency has purchased liability insurance.

Historically, the determination of whether the doctrine of governmental immunity will protect a particular agency of the State from suit is a decision to be made by the courts upon a determination of the facts.

The term "proprietary", as applied in governmental immunity cases, merely means the agency is engaged in an enterprise which is commercial in character, is usually carried on by individuals in competition with other businesses, and is for the profit and benefit of the unit conducting the activity. Choctaw Pressed Brick Co. v. Townsend, 108 Okl. 235, 236 P. 246 (1925); Henry v. Oklahoma Turnpike Authority, Okl., 478 P.2d 898 (1970); Newman v. State, Okl., 490 P.2d 1079 (1971); State v. Bond, Okl., 344 P.2d 562 (1959).

The designation by this Court of a State Lodge is governmental, rather than proprietary, is patently contrary to fact. In Perkins v. State, 252 Ind. 549, 251 N.E.2d 30 (1969), the Indiana Supreme Court considered whether the State's furnishing of housing facilities in a State Park was proprietary in nature, and if so, whether that permitted suit to be brought in tort. The court found the park cottages to be proprietary in nature and allowed the suit, holding:

> "There may be some logical reason why a government should not be liable for its governmental actions and functions. We do not have that question before us and need not at this time give it further consideration, since the facts in this case show that the injurious act complained of in this case arose out of the proprietary function of the State of Indiana, namely, the furnishing of housing facilities in a state park. 40 A.L.R.2d 927; Flowers v. Bd. of Comrs. of Vanderburgh County, 240 Ind. 668, 168 N.E.2d 224 (1960). It was a commercial project, supposedly operated in a businesslike fashion. Certainly the state should not offer facilities which are not clean and wholesome. It seems to us to be consistent in this principle of law and its application in this jurisdiction that if certain municipalities and the county governments are liable to the extent of the operation of proprietary functions, then there is no reason why the state as a principal should not likewise be liable for its proprietary function. It is of little concern to the injured party whether the injury was caused by a city, county, or state. We feel, to be consistent, the common law principle should be applicable to all governmental units alike."

This Court, like the Indiana Supreme Court, has heretofore recognized a distinction between governmental and proprietary functions at municipal and county level, and has recognized a like distinction in various agencies of state government. See: Henry v. Oklahoma Turnpike Authority, Okl., 478 P.2d 898 (1970); State v. Bone, Okl., 344 P.2d 562 (1959). The majority opinion today effectively removes that pivotal distinction.

Moreover, this Court early held that the operation of parks is a proprietary function of a city government. City of Sapulpa v. Young, 147 Okl. 179, 296 P. 418 (1931). By even stronger reasoning a state operated hotel in a State Park should be considered proprietary. To maintain Fountainhead Lodge is not proprietary in nature is tantamount to holding hotels are not commercial ventures.

I would prospectively hold that governmental immunity shields the State from liability arising in tort in only governmental, as distinguished from proprietary functions.