Dear President Pro Tempore Morgan,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does the Oklahoma Commission on Consumer Credit haveauthority to enforce the federal Real Estate SettlementProcedures Act?
 2. Does the Real Estate Settlement Procedures Act preclude amortgage broker from collecting a loan origination fee?
 3. May the Commission on Consumer Credit prescribe the mannerin which the federal Department of Housing and Urban Development("HUD") HUD-1 form is filled out by mortgage brokers?
 4. Does the Administrator of Consumer Credit have authority torequire a mortgage broker to refund a loan origination fee to aborrower?
¶ 1 To answer your questions it is necessary to analyze the federal Real Estate Settlement Procedures Act ("RESPA"),12 U.S.C. §§ 2601-2617 (1974), amended by Act of Sept. 30, 1996, the Oklahoma Mortgage Broker Licensure Act ("Licensure Act"), 59O.S. 2001 Supp. 2005, §§ 2081-2093, and the interaction between the two laws.
 I. The Real Estate Settlement Procedures Act ("RESPA")
¶ 2 Congress enacted RESPA to protect residential home buyers. Congress found that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process."12 U.S.C. § 2601(a) (1996). Congress further found a need to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." Id.
¶ 3 The explicit purpose of RESPA is provided at Section 2601(b) and includes in pertinent part as follows:
 (b) It is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result —
 (1) in more effective advance disclosure to home buyers and sellers of settlement costs;
 (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services[.]
Id.
¶ 4 To make real estate transactions more transparent, Congress charged the Secretary of Housing and Urban Development ("HUD") with the duty of developing and prescribing a standard form for the statement of settlement costs. Id. § 2603(a). The form "shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement." Id. Although standard, the form must be flexible enough to include "variations as may be necessary to reflect differences in legal and administrative requirements or practices in different areas of the country."Id. "The Secretary may, by regulation, permit the deletion from the form prescribed under this section of items which are not, under local laws or customs, applicable in any locality, except that such regulation shall require that the numerical code prescribed by the Secretary be retained in forms to be used in all localities." Id. The settlement form shall be provided to the buyer "at or before settlement by the person conducting the settlement." Id. § 2603(b).
¶ 5 Congress further charged the HUD Secretary with the duty of preparing special informational booklets. Id. § 2604(a). The booklets must contain, among other information, an explanation and sample of the standard settlement statement and "a description and explanation of the nature and purpose of each cost incident to a real estate settlement." Id. § 2604(b)(1), (2).[1] Lenders must provide the home buyer with a copy of the booklet as well as "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement as prescribed by the Secretary." Id. § 2604(c), (d).
¶ 6 Pursuant to 12 U.S.C. § 2604, the Secretary published regulations at 24 C.F.R. § 3500, Appendix A, for the content and format of settlement statements. See id. Appendix A establishes a numbering system for the form, provides instructions for filling out each line of the form, and includes a sample form ("HUD-1). Section L of the sample HUD-1 form provides for the disclosure of settlement charges. Line 801 of Section L in the sample HUD-1 form contains the words, "Loan Origination Fee." The instructions in Appendix A for filling out line 801 state in full as follows: "Line 801 is used to record the fee charged by theLender for processing or originating the loan. If this fee is computed as a percentage of the loan amount, enter the percentage in the blank indicated." Id. (emphasis added).
¶ 7 Lines 808-811 are blank on the sample HUD-1 form. See id.
Appendix A of Part 3500 provides the instructions for filling out these lines: "Lines 808-811 are used to list additional items payable in connection with the loan including a CLO Access fee,a mortgage broker fee, fees for real estate property taxes or other real property charges." Id. (emphasis added).
¶ 8 Title 24 C.F.R. § 3500.2(b) defines "mortgage broker" in pertinent part as follows: "Mortgage broker means a person (not an employee or exclusive agent of a lender) who brings a borrower and lender together to obtain a federally related mortgage loan, and who renders services as described in the definition of `settlement services' [sic] in this section." Id.
¶ 9 Section 3500.2(b) defines "settlement service" in pertinent part as follows:
 Settlement service means any service provided in connection with a prospective or actual settlement, including, but not limited to, any one or more of the following:
 (1) Origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of such loans);
 (2) Rendering of services by a mortgage broker
(including counseling, taking of applications, obtaining verifications and appraisals, and other loan processing and origination services, and communicating with the borrower and lender);
 (3) Provision of any services related to the origination, processing or funding of a federally related mortgage loan[.]
Id. (emphasis added).
¶ 10 Section 3500.7(b) requires mortgage brokers to provide a Good Faith Estimate ("GFE") to the borrower within three days of receipt of the loan application.[2] The GFE must include each charge that "[w]ill be listed in section L of the HUD-1 or HUD-1A in accordance with the instructions set forth in appendix A. . . ." 24 C.F.R. § 3500.7(c)(1). Appendix C of Part 3500 provides a sample GFE using the HUD-1 numbering system. See id.
"Loan origination fee" is listed at line 801. Id. "Mortgage broker fee" has no corresponding number; rather, it has the following instructions: "[Use blank line in 800 section]." Id.
¶ 11 Appendix B to Part 3500 provides illustrations of RESPA requirements. See id. Appendix B(13) addresses the fee a mortgage broker receives for loan origination services:
 13. Facts. A is a mortgage broker who provides origination services to submit a loan to a Lender for approval. The mortgage broker charges the borrower a uniform fee for the total origination services, as well as a direct up-front charge for reimbursement of credit reporting, appraisal services or similar charges.
 Comment. The mortgage broker's fee must be itemized in the Good Faith Estimate and on the HUD-1 Settlement Statement. Other charges which are paid for by the borrower and paid in advance are listed as P.O.C. on the HUD-1 Settlement Statement, and reflect the actual provider charge for such services. Also, any other fee or payment received by the mortgage broker from either the lender or the borrower arising from the initial funding transaction, including a servicing release premium or yield spread premium, is to be noted on the Good Faith Estimate and listed in the 800 series of the HUD-1 Settlement Statement.
Id.
¶ 12 From a plain reading of 24 C.F.R. § 3500, Appendix A, shows that line 801 of Section L of the HUD-1 form is to be used to indicate the amount of a loan origination fee charged by the lender. Mortgage broker fees, including fees for loan origination services, are to be listed in lines 808-811. See id. As a result, RESPA requires that fees charged by the mortgage broker be distinguished from fees charged by the lender and disclosed separately.
 II. RESPA and State Law
¶ 13 Title 12 U.S.C. § 2616 addresses state laws which conflict with RESPA and provides in full as follows:
 § 2616. State laws unaffected; inconsistent Federal and State provisions
 This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency. The Secretary is authorized to determine whether such inconsistencies exist. The Secretary may not determine that any State law is inconsistent with any provision of this chapter if the Secretary determines that such law gives greater protection to the consumer. In making these determinations the Secretary shall consult with the appropriate Federal agencies.
Id. (emphasis added).
¶ 14 As a result, RESPA preempts state law that is inconsistent with its provisions. However, state law is consistent if it provides greater protection to the consumer than does RESPA. In other words, RESPA establishes the minimum standards for consumer protection. States are free to require greater and more transparent disclosure of residential real estate transaction costs, but they may not permit less disclosure than the federal law.
¶ 15 In addition to RESPA, mortgage brokerage transactions in Oklahoma are governed by the Licensure Act. See 59 O.S. 2001 Supp. 2005, §§ 2081-2093. To determine whether RESPA has preempted Oklahoma law, it is necessary to determine whether the Licensure Act permits less disclosure of mortgage broker fees than RESPA requires. If the Oklahoma law permits less disclosure, then it is inconsistent with RESPA and is preempted.
 III. The Oklahoma Mortgage Broker Licensure Act
¶ 16 The Licensure Act defines a mortgage broker as any "person who is not exempt under Section 2083 of this title[3] and who for compensation or in the expectation of compensation either directly or indirectly makes, negotiates or offers to make or negotiate a residential mortgage loan." 59 O.S. Supp. 2005, §2082[59-2082](12) (footnote added).
¶ 17 To practice as a mortgage broker in Oklahoma, a person must be licensed by the Commission on Consumer Credit. 59 O.S.2001, § 2084[59-2084]; see also 59 O.S. Supp. 2005 § 2085[59-2085]. The Administrator of Consumer Credit enforces the Licensure Act.Id. § 2088. The Administrator of Consumer Credit has authority to take action against the license of a mortgage broker for violations of the Licensure Act. Id. § 2088(A).
¶ 18 The Licensure Act requires a mortgage broker to have "a written correspondent or loan brokerage agreement with a lender before any solicitation of, or contracting with, the public."Id. § 2086(A). In negotiating a loan with a borrower the mortgage broker must disclose all costs that the borrower must pay in relation to the loan. Section 2086(B) provides:
 B. 1. Upon receipt of a loan application and before the receipt of any monies from a borrower, a mortgage broker shall provide to each borrower a full written disclosure containing an itemization and explanation of all fees and costs that the borrower is required to pay in connection with obtaining a residential mortgage loan, or specifying the fee or fees which inure to the benefit of the mortgage broker and other such disclosures as may be required by rule of the Commission on Consumer Credit.
 2. A good faith estimate of a fee or cost shall be provided if the exact amount of the fee or cost is not determinable.
 3. This subsection shall not be construed to require disclosure of the distribution or breakdown of loan fees, discount, or points between the mortgage broker and any lender or investor.
Id. (emphasis added).
¶ 19 As a result, under Oklahoma law, the mortgage broker must disclose to the borrower the actual or estimated costs of the loan. Id. The disclosure must be made upon receipt of the loan application and before the broker receives any monies from the borrower. Id. However, the language of Section 2086(B) is problematic when read against the minimum disclosure standards established by RESPA. See 12 U.S.C. §§ 2601-2617. Subsection (B)(1) of Section 2086 appears to provide the broker with a choice between two disclosures of varying degrees of transparency. And subsection (B)(3) appears to actually undo some of the disclosure required by subsection (B)(1).
¶ 20 In construing 59 O.S. Supp. 2005, § 2086[59-2086](B), the first question is whether the statute has been preempted by RESPA. Presumption is never presumed; rather, the intent of Congress to invalidate state law must be clearly expressed. Akin v. Mo.Pac. R.R. Co., 977 P.2d 1040, 1044 (Okla. 1998). However, even if Congress clearly expresses its intent to preempt, the scope of the preemption is presumed to be limited. Medtronic, Inc. v.Lohr, 518 U.S. 470, 484-85 (1996). Title 12 U.S.C. § 2616
expresses Congress's intent that RESPA preempt state law to the extent that state law is inconsistent with RESPA. We must determine the extent of the preemption.
¶ 21 As discussed above, one of the purposes of RESPA is to create a settlement process that results "in more effective advance disclosure to home buyers and sellers of settlement costs[.]" 12 U.S.C. § 2601(b)(1) (1996). Toward that end Congress mandated a standard settlement form that "shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement." Id. § 2603(a) (emphasis added). RESPA requires brokers to provide borrowers with a booklet prepared by the HUD Secretary that contains a sample of the form as well as "a description and explanation of the nature and purpose of each
cost incident to a real estate settlement[.]" Id. § 2604(b)(1), (2). RESPA further requires brokers to provide "a good faith estimate of the amount or range of charges for specific
settlement services the borrower is likely to incur in connection with the settlement as prescribed by the Secretary." Id. § 2604(c). In addition, RESPA requires a separate listing of settlement services provided by mortgage brokers and those provided by lenders. 24 C.F.R. § 3500, App. A (§ L).
¶ 22 Title 59 O.S. Supp. 2005, § 2086[59-2086](B)(3) is inconsistent with RESPA. Subsection (B)(3) provides that "[Section 2086(B)] shall not be construed to require disclosure of the distribution or breakdown of loan fees, discount, or points between the mortgage broker and any lender or investor." This provision is not only inconsistent with RESPA's requirement that all fees be specifically disclosed, but also with the requirement that mortgage broker fees be listed separately from the lender's fees. For example, the lender's loan origination fee must be disclosed at line 801 of the HUD-1 form and the mortgage broker's fee for origination services must be listed at lines 808-811. See
24 C.F.R. § 3500, App. A (§ L). Section 2086(B)(3) of Title 59 would allow both fees to be combined together without distinguishing the lender's fee from the broker's fee. Because subsection (B)(3) permits a disclosure that does not distinguish between fees paid to the broker and those paid to the lender, it is inconsistent with RESPA and is therefore preempted.
¶ 23 On its face, 59 O.S. Supp. 2005, § 2086[59-2086](B)(1) appears to provide two alternative standards of disclosure. The first part of (B)(1) requires "a full written disclosure containing an itemization and explanation of all fees and costs that the borrower is required to pay in connection with [the loan]. Id.ebster's Third New International Dictionary defines "itemize" as "to set down item by item," "to specify the separate items of," or "to note or state the separate particulars or details of item by item." Id. at 1203. Webster's defines "explanation" as "the act or process of explaining." Id. at 801. Webster's
definition of "explain" includes "to make manifest: present in detail" and "to make plain or understandable." Id. As a result, the first part of subsection (B)(1) appears to comport with RESPA in that it mandates a specific listing and explanation of all fees and costs that the borrower must pay.
¶ 24 The second part of subsection (B)(1) of Section 2086 allows for a full written disclosure "specifying the fee or fees which inure to the benefit of the mortgage broker." Id.
Although requiring a full written disclosure, the second part does not specifically address other fees and costs borne by the borrower.
¶ 25 Applying the presumption against preemption, as it relates to the scope of the preemption, it is possible to construe Section 2086(B)(1) in a manner that is consistent with RESPA. Both parts of subsection (B)(1) require a "full written disclosure." The first part includes all fees and costs and emphasizes itemization and explanation of those fees and costs.Id. The second part emphasizes specification of the broker's fees. Id. Subsection (B)(1) can be saved from preemption by construing it to require itemization and explanation of all fees including, at a minium, a specification of each fee paid to the broker. Construed in such a manner subsection (B)(1) is not preempted.
¶ 26 In summary, 59 O.S. Supp. 2005, § 2086[59-2086](B)(3) is preempted by RESPA and has no effect. Section (B)(1) is saved from preemption to the extent that it requires a full written disclosure of all fees and costs the borrower must pay, an itemization and explanation of each fee or cost, and, at a minimum, a specification of each fee that inures to the benefit of the broker. With this analysis in mind, we turn to your specific questions.
 IV. The Hud Secretary Enforces RESPA. The Commission on Consumer Credit and the Administrator of Consumer Credit Enforce The Oklahoma Mortgage Broker Licensure Act.
¶ 27 You first ask whether the Commission on Consumer Credit ("Commission") has the authority to enforce RESPA. The answer is no: the Commission does not have the authority to enforce RESPA. Authority to enforce RESPA lies with the HUD Secretary who may conduct investigations into violations of the Licensure Act.12 U.S.C. § 2617(c)(1) (1997).[4] However, the Commission and the Administrator of Consumer Credit have authority to enforce the Licensure Act. 59 O.S. Supp. 2005, § 2088[59-2088]. The Administrator has authority to investigate the business transactions of mortgage brokers and to take action against the license of a mortgage broker for violations of the Licensure Act.Id.
 V. A Mortgage Broker May Charge a Fee for Loan Origination Services.
¶ 28 You next ask whether mortgage brokers may charge a loan origination fee. Title 59 O.S. Supp. 2005, § 2082[59-2082](12) defines "mortgage broker" in part as a person who receives direct or indirect compensation for making or negotiating a residential mortgage loan. Section 2082(5) defines "compensation" as "anything of value or any benefit including points, commissions, bonuses, referral fees and loan origination fees[.]" Id.
¶ 29 RESPA at 24 C.F.R. § 3500.2(b) defines "mortgage broker" as a person "who brings a borrower and lender together" and renders settlement services. Id. The term "settlement service" includes "loan processing and origination services" as rendered by a mortgage broker. Id. As a result, both state and federal laws allow a mortgage broker to charge a fee for loan origination services. However, as stated above, while the Oklahoma law uses the term "loan origination fee" to describe mortgage broker compensation, (59 O.S. Supp. 2005, § 2082[59-2082](5)) the federal law refers to such compensation as a "settlement service" fee for "loan processing and origination service." 24 C.F.R. § 3500.2(b). The federal law distinguishes between the fee charged by a broker for loan origination services and the loan origination fee charged by a lender. See id.
¶ 30 In answer to your question, a mortgage broker may charge a fee for loan origination services. Such a fee is referred to as a "loan origination fee" under Oklahoma law at 59 O.S. Supp. 2005,§ 2082[59-2082](5) and as a "settlement fee" for "loan origination services" under federal law at 24 C.F.R. §§ 3500.2(b). Under RESPA, a "loan origination fee" is a fee charged by a lender and entered at line 801 of HUD-1. See 24 C.F.R. § 3500, App. A. The "loan origination fee" charged by mortgage brokers under Oklahoma law is the equivalent of the settlement fee for loan origination fees under RESPA which is entered at lines 808-811 on the HUD-1.Id.
 VI. The Commission Has Authority to Prescribe The Manner in Which a Broker must Complete The HUD-1 Form in Order to Comply with Oklahoma Law.
¶ 31 In your third question you ask whether the Commission may prescribe the manner in which a mortgage broker completes the HUD-1 form. The Commission has authority to regulate the practice of mortgage brokering in the Licensure Act. See 59 O.S. Supp.2005, § 2088[59-2088]. As discussed above, the Licensure Act requires that the mortgage broker provide the borrower with "a full written disclosure containing an itemization and explanation of all fees and costs that the borrower is required to pay in connection with obtaining a residential mortgage loan." Id. § 2086(B)(1). Moreover, the mortgage broker must specify the fees that inure to the broker's benefit. Id.
¶ 32 A state agency has both explicit powers as set forth in its enabling act, and implied powers that are necessary for it to efficiently carry out its statutory duties. Okla. Tax Comm'n v.Fortinberry Co., 207 P.2d 301, 304-05 (Okla. 1949). As a result, the Commission has the authority to prescribe the manner in which mortgage brokers must disclose costs to the borrower. Such authority is necessary for the efficient and uniform regulation of the practice.
¶ 33 The Commission may issue its own form that mortgage brokers must complete to disclose all costs and fees in compliance with Oklahoma law. See 59 O.S. Supp. 2005, § 2086[59-2086].
However, no state or federal law prohibits the Commission from using the HUD-1 form to accomplish this purpose. See id. As a result, the Commission may prescribe the manner in which a broker must complete the HUD-1 form in order to comply with Oklahoma law. For example, the Commission may require that brokers enter the fee they charge for loan origination services at lines 808-811 of the HUD-1 form instead of at line 801. As previously discussed, such a requirement would be in keeping with HUD's own regulations in determining how mortgage broker fees are to be disclosed. Part 3500, Appendix A of 24 C.F.R. expressly states that line 801 is to be used to show the fee charged by thelender for processing or originating the loan. Fees charged by mortgage brokers for loan origination or other settlement services are to be listed at lines 808-811. Id.
¶ 34 Although the Commission has authority to prescribe the manner in which the HUD-1 form is completed, it has not promulgated any administrative rule doing so.[5] The Oklahoma Administrative Procedures Act defines a "rule" in pertinent part as an "agency . . . statement of general applicability and future effect that implements, interprets or prescribes law or policy." 75 O.S. 2001, § 250.3[75-250.3](15). Moreover, "[n]o agency rule is valid or effective against any person or party, or may be invoked by the agency for any purpose, until it has been promulgated as required in the Administrative Procedures Act." Id. § 308.2(A). Whether a broker has sufficiently disclosed the costs of a loan to the borrower in any particular transaction, regardless of the form used, is a question of fact that is beyond the scope of an official Opinion of the Attorney General. 74 O.S. 2001, § 18b[74-18b](A)(5). However, if the Commission seeks to prescribe the manner in which a broker must complete the HUD-1 form for purposes of complying with Oklahoma law, it must do so through the rule promulgation process as provided for in Article I of the Oklahoma Administrative Procedures Act ("APA") (75 O.S. 2001 Supp. 2005, §§ 250-308.2).
 VII. The Administrator of Consumer Credit May Order a Broker to Refund a Fee as a Sanction Following a Hearing.
¶ 35 In your last question, you ask whether the Administrator of Consumer Credit may require mortgage brokers to refund loan origination fees to borrowers. Pursuant to Administrative Rule OAC 160:55-7-1(a), mortgage brokers must make records of their transactions available to the Department of Consumer Credit upon demand. The Department auditors conduct examinations of those transactions pursuant to OAC 160: 55-9-1(b) and issue the broker a Mortgage Broker Examination Report. It is the practice of the Department that the auditor note an alleged infraction on the Report. It is further the practice of the Department to give the broker ten days in which to correct the infraction. The Administrator of Consumer Credit has authority to institute individual proceedings pursuant to Article II of the Oklahoma Administrative Procedures Act ("APA") (75 O.S. 2001 Supp.2005, §§ 308a-323) against brokers who commit infractions. See59 O.S. Supp. 2005, § 2088[59-2088]. If, as a result of the individual proceeding, it is found that the broker violated the Licensure Act, the Administrator may issue a final order imposing one or more of the following sanctions pursuant to Section 2088(A)
1. Reprimand;
2. Probation for a specified period of time;
 3. Suspension of licensee for specified periods of time;
4. Revocation of license;
 5. Imposition of an administrative fine which shall be not less than One Hundred Dollars ($100.00) nor more than Two Thousand Dollars ($2,000.00) for each violation nor exceed Five Thousand Dollars ($5,000.00) for all violations resulting from a single incident or transaction;
 6. Restitution of actual damages suffered by the complaining person; or
 7. Any combination of sanctions as provided for by paragraphs 1 through 6 of this subsection.
Id.
¶ 36 As a result, the Administrator may, as part of the final order in an individual proceeding, order the broker to refund a fee for loan origination services when the refund constitutes actual damages suffered by the borrower. 59 O.S. Supp. 2005, §2088[59-2088](A)(6).[6]
 ¶ 37 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma Commission on Consumer Credit does not have authority to enforce the federal Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. §§ 2601-2617 (1996)). However, the Commission and the Administrator of Consumer Credit have the authority to enforce the Oklahoma Mortgage Broker Licensure Act ("Licensure Act") ( 59 O.S. 2001 Supp. 2005, §§ 2081 -2093). Title 59 O.S. Supp. 2005, § 2086[59-2086] (B) requires mortgage brokers to provide borrowers with a full written disclosure containing an itemization and explanation of all fees and costs associated with the loan that the borrower must pay, including, at a minimum, a specification of all fees that inure to the benefit of the broker. Id. § 2086(B)(1).
 2. RESPA and the Licensure Act both allow a mortgage broker to charge a fee for loan origination services. 59 O.S. Supp. 2005, § 2082(5). Under the Licensure Act the fee is referred to as a "loan origination fee." Id. Under RESPA the fee is referred to as a "settlement fee" for" loan origination services." 24 C.F.R. § 3500.2 (definitions of "settlement service" and "mortgage broker"); 24 C.F.R § 3500, App. A (Section L of Sample HUD-1 form). RESPA distinguishes between a "loan origination fee" charged by a lender and entered at line 801 of the HUD-1 form and a fee for loan origination services charged by a mortgage broker and entered at lines 808-811 of HUD-1. See 24 C.F.R. § 3500, App. A (Section L of Sample HUD-1 form). Loan origination fees charged by mortgage brokers pursuant to the Licensure Act are equivalent to the mortgage broker fees for loan origination services entered at lines 808-811 of the HUD-1 form under RESPA.
 3. The Oklahoma Commission on Consumer Credit has the authority to prescribe the manner in which mortgage brokers complete the HUD-1 form for the purpose of verifying compliance with the Licensure Act. The manner prescribed must be consistent with RESPA and the regulations issued by the Secretary of Housing and Urban Development at 24 C.F.R. § 3500. Requiring mortgage brokers to list their fees for loan origination services on lines 808-811 of the HUD-1 is consistent with RESPA and 24 C.F.R. § 3500. However, the Commission must promulgate administrative rules pursuant to Article I of the Oklahoma Administrative Procedures Act ( 75 O.S. 2001 Supp. 2005, §§ 250-308.2) before it can require brokers to complete the HUD-1 form in a certain manner.
 4. The Administrator of Consumer Credit may order a mortgage broker to refund a fee for loan origination services as restitution for actual damages pursuant to 59 O.S. Supp. 2005, § 2088(A)(6) following an individual proceeding conducted in accordance with Article II of the Oklahoma Administrative Procedures Act ( 75 O.S. 2001 Supp. 2005, §§ 308a-323).
W.A. DREW EDMONDSON Attorney General of Oklahoma
GRANT E. MOAK Assistant Attorney General
[1] "Such booklets shall take into consideration differences in real estate settlement procedures which may exist among the several States and territories of the United States and among separate political subdivisions within the same State and territory." Id. § 2604(b).
[2] "If a mortgage broker is the exclusive agent of the lender, either the lender or the mortgage broker shall provide the [GFE]. . . ." 24 C.F.R. § 3500.7(a)(4).
[3] For purposes of this Opinion, we will assume that the mortgage broker is not exempt from the Licensure Act.
[4] RESPA creates a private right of action and authorizes the United States Attorney General and the state attorneys general to enforce Sections 2605(f), 2607(d)(4) and 2608(b) of the Act.
[5] The Commission has authority to promulgate rules regarding disclosure statements pursuant to 59 O.S.Supp. 2005, §2086[59-2086](B)(1).
[6] Pursuant to OAC 160:55-9-1(f), the Administrator and broker may informally dispose of an alleged infraction "[i]n order to avoid the expense and time involved in formal legal proceedings."Id.